## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ASHLEY ROBBINS, Individually and as )
Personal Representative of the Estate of )
WARD ROBBINS, Deceased, )
  )
  )
       Plaintiff, )
  )
vs. )     Case No. **8:23-cv-01723-KKM-AAS**
  )
AIR & LIQUID SYSTEMS CORPORATION, )
     individually and as successor by merger )     **SECOND AMENDED COMPLAINT**
     to BUFFALO PUMPS, INC.; )
ALFA LAVAL, INC., individually and as )     **Judge Kathryn Kimbel Mizelle**
     successor in interest to DELAVAL )
     SEPARATOR CO. and SHARPLES )
     CORP.; )
CLEAVER-BROOKS INC., f/k/a CLEAVER- )     Jury Trial Demanded
     BROOKS, a division of AQUA-CHEM )
     INC.; )
DCO LLC f/k/a DANA COMPANIES, )
     individually and as successor in interest to )
     VICTOR GASKET MANUFACTURING )
     COMPANY; )
FOSTER WHEELER ENERGY CORPORATION; )
GENERAL ELECTRIC COMPANY; )
GRINNELL, LLC, d/b/a GRINNELL )
     CORPORATION; )
PARAMOUNT GLOBAL, f/k/a VIACOM INC., )
     f/k/a CBS CORPORATION, f/k/a )
     VIACOM, INC., successor by merger to )
     CBS CORP., f/k/a WESTINGHOUSE )
     ELECTRIC CORPORATION, )
     individually and as successor-in-interest to )
     BF STURTEVANT CO.; )
REDCO CORPORATION, f/k/a CRANE CO., )
     individually and as successor in interest to )
     DEMING PUMP CO., COCHRANE )
     CORPORATION, CHAPMAN VALVE )
     CO., NATIONAL-US RADIATOR CORP. )
     SWARTWOUT CO., and PACIFIC )
     STEEL BOILER CORPORATION )
  )
     Defendants. )
_____/

1

<u>**PLAINTIFF'S SECOND AMENDED COMPLAINT**</u>

COMES NOW Plaintiff, **ASHLEY ROBBINS, Individually and as Personal Representative of the Estate of Ward Robbins**, by and through **her** undersigned attorneys, and for **her** causes of action against the Defendants, states as follows.

**THE PARTIES**

1. **Decedent**, WARD ROBBINS, **was** an individual residing at 1709 Huntington Path, The Villages, Florida 32162 and a citizen of the state of Florida. **Decedent**, WARD ROBBINS, was exposed to and inhaled, ingested, or otherwise absorbed large amounts of asbestos fibers emanating from certain products while in the State of Florida.

2. Defendant, AIR & LIQUID SYSTEMS CORPORATION, is a foreign corporation organized in the State of Pennsylvania, that purposefully availed itself of the benefits and protections of the State of Florida as Defendant is and/or has engaged in substantial and not isolated activity and/or transacted substantial revenue producing business and/or essentially at home in the State of Florida such that the exercise of jurisdiction does not offend traditional notices of fair play and substantial justice. With respect to this Defendant, Plaintiff alleges **Decedent's** asbestos exposure and subsequent injury to friable asbestos emanating from at minimum Buffalo pumps' insulation, packing, and gaskets while in the State of Florida as well as at the locations listed.

3. Defendant, ALFA LAVAL, INC., is a foreign corporation organized and existing under the laws of the State of New Jersey, that purposefully availed itself of the benefits and protections of the State of Florida as Defendant is and/or has engaged in substantial and not isolated activity and/or transacted substantial revenue producing business and/or essentially at home in the State of Florida such that the exercise of jurisdiction does not offend traditional notices of fair play and substantial justice. With respect to this Defendant,

Plaintiff alleges **Decedent's** asbestos exposure and subsequent injury to friable asbestos emanating from at minimum DeLaval and Sharples oil purifiers and pumps' insulation, packing, and gaskets while in the State of Florida as well as at the locations listed.

4. Defendant, CLEAVER-BROOKS INC., is a foreign corporation organized and existing under the laws of the State of Delaware, that purposefully availed itself of the benefits and protections of the State of Florida as Defendant is and/or has engaged in substantial and not isolated activity and/or transacted substantial revenue producing business and/or essentially at home in the State of Florida such that the exercise of jurisdiction does not offend traditional notices of fair play and substantial justice. With respect to this Defendant, Plaintiff alleges **Decedent's** asbestos exposure and subsequent injury to friable asbestos emanating from at minimum Cleaver Brooks pumps, boilers, distillers, evaporators, soot blowers, and water heaters' insulation, packing, and gaskets while in the State of Florida as well as at the locations listed.

5. Defendant, DCO LLC, is a foreign corporation organized and existing under the laws of the State of Virginia, that purposefully availed itself of the benefits and protections of the State of Florida as Defendant is and/or has engaged in substantial and not isolated activity and/or transacted substantial revenue producing business and/or essentially at home in the State of Florida such that the exercise of jurisdiction does not offend traditional notices of fair play and substantial justice. With respect to this Defendant, Plaintiff alleges **Decedent's** asbestos exposure and subsequent injury to friable asbestos emanating from at minimum Dana and Victor gaskets, engines, sheet packing, clutches, brakes, milling machines, lathes, and associated asbestos-containing components while in the State of Florida as well as at the locations listed.

6. Defendant, FOSTER WHEELER ENERGY CORPORATION, is a foreign corporation organized and existing under the laws of the State of Delaware, that purposefully availed itself of the benefits and protections of the State of Florida as Defendant is and/or has engaged in substantial and not isolated activity and/or transacted substantial revenue producing business and/or essentially at home in the State of Florida such that the exercise of jurisdiction does not offend traditional notices of fair play and substantial justice. With respect to this Defendant, Plaintiff alleges **Decedent's** asbestos exposure and subsequent injury to friable asbestos emanating from at minimum Foster Wheeler boilers, condensers, hot water heaters, and steam generators' insulation, packing, and gaskets while in the State of Florida as well as at the locations listed.

7. Defendant, GENERAL ELECTRIC COMPANY, is a foreign corporation organized and existing under the laws of the state of New York that purposefully availed itself of the benefits and protections of the State of Florida as Defendant is and/or has been engaged in substantial and not isolated activity and/or transacted substantial revenue producing business and/or essentially at home in the State of Florida such that the exercise of jurisdiction does not offend traditional notices of fair play and substantial justice. With respect to this Defendant, Plaintiff alleges **Decedent's** asbestos exposure and subsequent injury to friable asbestos emanating from at minimum General Electric turbines' insulation and gaskets while in the State of Florida as well as the locations listed.

8. Defendant, GRINNELL, LLC, is a foreign corporation organized in the State of Delaware that purposefully availed itself of the benefits and protections of the State of Florida as Defendant is and/or has engaged in substantial and not isolated activity and/or transacted substantial revenue producing business and/or essentially at home in the State of Florida

such that the exercise of jurisdiction does not offend traditional notices of fair play and substantial justice. With respect to this Defendant, Plaintiff alleges **Decedent's** asbestos exposure and subsequent injury to friable asbestos emanating from at minimum Grinnell valves' insulation, packing, and gaskets while in the State of Florida as well as at the locations listed.

9. Defendant, PARAMOUNT GLOBAL, is a corporation organized and existing under the laws of the State of Delaware, that purposefully availed itself of the benefits and protections of the State of Florida as Defendant is and/or has engaged in substantial and not isolated activity and/or transacted substantial revenue producing business and/or essentially at home in the State of Florida such that the exercise of jurisdiction does not offend traditional notices of fair play and substantial justice. With respect to this Defendant, Plaintiff alleges **Decedent's** asbestos exposure and subsequent injury to friable asbestos emanating from at minimum Viacom, Westinghouse, and BF Sturtevant turbines, generators, electrical, and forced draft blowers' insulation, packing, and gaskets while in the State of Florida as well as at the locations listed.

10. Defendant, REDCO CORPORATION, is a corporation organized and existing under the laws of the State of Delaware, that purposefully availed itself of the benefits and protections of the State of Florida as Defendant is and/or has engaged in substantial and not isolated activity and/or transacted substantial revenue producing business and/or essentially at home in the State of Florida such that the exercise of jurisdiction does not offend traditional notices of fair play and substantial justice. With respect to this Defendant, Plaintiff alleges **Decedent's** asbestos exposure and subsequent injury to friable asbestos emanating from at minimum Crane, Deming, Cochrane, Chapman, Swartwout, and Pacific Steel Boiler hot water

heaters, valves, pumps, boilers, and gaskets' insulation, packing, and gaskets while in the State of Florida as well as at the locations listed.

## JURISDICTION AND VENUE

11. **D**istrict courts have original jurisdiction regarding any civil case of admiralty or maritime jurisdiction provided by 28 U.S.C. § 1333. Each named Defendant exposed Mr. Robbins to asbestos while he served aboard naval vessels on navigable waters during his Naval service. Additionally, maintenance of each Defendant's products ensure the proper functioning of the vessels and constitutes an activity traditionally undertaken on a vessel.

12. This Court has personal jurisdiction over each and every Defendant pursuant to Florida's long-arm statutes, including but not limited to sections **47.172**, **48.081**, **48.181,** and **48.193**, Florida Statutes.

13. This Court has specific personal jurisdiction over each and every Defendant as the suit arises out of or relates to each Defendants' contacts with the forum state, including, but not limited to:

   a. Defendants have engaged in commercial activities and have conducted business and business ventures in the State of Florida at all times material to the causes of action and through the present;
   b. The alleged causes of action arise out of, or relate to, the business or business ventures conducted within the State of Florida by each named Defendant' Defendants purposefully availed themselves of the benefits and protections of the State of Florida and Florida law by conducting significant revenue-producing business and could have reasonably foreseen that their activities would subject them to jurisdiction of the Florida courts;
   c. Defendants have or have had offices or agencies within the State of Florida;
   d. **Decedent** was exposed to Defendants' asbestos-containing products when he worked with and around Defendants' asbestos-containing products in the State of Florida, in addition to the territorial waters of Florida;

e. The foreign corporation Defendants engaged in a course of conduct that was nationwide, including within Florida, in its distribution and sale of asbestos-containing products and/or in its failure to provide adequate warnings;

f. Each foreign corporation Defendant specifically targeted the Florida market by directly or indirectly distributing asbestos-containing products within the State of Florida;

g. The foreign corporation Defendants have through agents, employees, brokers, jobbers, wholesalers, or distributors sold, consigned, licensed, or leased tangible or intangible personal property to persons in Florida;

h. **Decedent** purchased Defendants' asbestos-containing products in the State of Florida;

i. The foreign corporation Defendants have committed wrongful acts either outside or inside of the State of Florida causing injury to **Decedent** as a result of products, materials, or things processed, serviced, or manufactured by defendants that were used or consumed within the State of Florida in the ordinary course of commerce, trade, or use, including breaching its continuing duty to warn **Decedent** to avoid further asbestos exposure;

j. The foreign corporation Defendants have conducted substantial and not isolated activity within Florida; and/or

k. The foreign incorporation Defendants registered for the right to conduct intrastate business in Florida, conducted intrastate business in Florida pursuant to such registration, maintained a registered agent for service of process in Florida, and/or was served with process in this case via its Florida registered agent.

14. **Decedent** alleges his asbestos exposure and subsequent injury **and death** arising from products manufactured by each named Defendant occurred on Florida soil while Plaintiff was serving aboard USS Snowden (DE-246) stationed at **Naval Air Station Key West, Florida at some point between 1955 and 1958, and** Merrill Stevens Shipbuilding in Jacksonville, Florida at some point during 1958 and 1959, **in addition to the territorial waters of Florida during this same period**. Thus, **Decedent** alleges products manufactured by each and every Defendant were used and/or consumed within the State of Florida in the ordinary course of commerce, trade, or use which exposed **Decedent** to asbestos fibers and caused his injury. As such, this Court has specific personal jurisdiction over each named Defendant.

15. Venue in this district is proper under 28 U.S.C. § 1391(b)(1) because all Defendants are

residents of Florida for venue purposes because pursuant to 28 U.S.C. § 1391(c)(2), each

entity is subject to the Court's personal jurisdiction due to the facts set forth above.

Alternatively, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of

the acts or omissions giving rise to the lawsuit occurred in this judicial district.

**FACTS**

16. **Decedent**, WARD ROBBINS, served in the U.S. Navy from December of 1955 to

March of 1975. Specifically, Mr. Robbins served aboard the USS Snowden (DE-246)

stationed at the Naval Air Station Key West in Key West, FL at some point during the

years 1955-1958 and the Merrill Stevens Shipbuilding in Jacksonville, Florida at some

point during 1958 and 1959, the USS Clamagore (SS-343) during the years 1960-1963,

the USS Elthan Allen (SSBN-608) during the years 1965-1970, and the Naval Air

Station Oceana in Sam Neck, Virginia during the years 1970-1974.

| <u>Date</u> | <u>Employer</u> | <u>Location</u> | <u>Job Type</u> | <u>Exposure</u> |
|---|---|---|---|---|
| 12/1955-12/1959 | US Navy | USS Snowden (DE-246) | Engineman | **Decedent** performed Navy engineman duties as needed and was exposed to asbestos throughout the site as he removed and replaced asbestos-containing products and/or worked near others who did. |
| 6/1960-3/1963 | US Navy | USS Clamagore (SS-343) | Engineman | **Decedent** performed Navy engineman duties as needed and was exposed to asbestos throughout the site as he removed and replaced asbestos-containing products and/or |

| | | | | |
|---|---|---|---|---|
| | | | | worked near others who did. |
| 6/1965-3/1970 | US Navy | USS Ethan Allen (SSBN- 608) | Electronics Technician | **Decedent** performed Navy electronics technician duties as needed and was exposed to asbestos throughout the site as he removed and replaced asbestos-containing products and/or worked near others who did. |
| 4/1970-3/1975 | US Navy | Naval Air Station Oceana, Dam Neck, VA | Instructional Design Supervisor | **Decedent** supervised the crafting of Naval instructional material. |

17. Throughout the 1955-1975 timeframe, and while aboard the naval ships, WARD ROBBINS, routinely and according to his job duties as a Navy Engineman, removed and replaced asbestos gaskets block, refractory, castable, pipe covering, insulating cement, packing and/or spray from valves, boilers pumps, and/or other miscellaneous machinery, and/or worked near others who did. Mr. Robbins also utilized asbestos gloves and blankets and removed and/or replaced asbestos pipe and tile, and/or worked near others who did. Mr. Robbins cut, scraped, chipped, mixed, pulled, and/or sawed these items, and/or worked near others who did. Mr. Robbins, as well as many others in his vicinity, routinely, and according to their job duties, performed these tasks. These processes, including sweeping up after each job, created asbestos dust that Mr. Robbins

regularly inhaled.

18. During the course of his employment at the various locations listed above, Mr. Robbins was exposed to and inhaled, ingested, or otherwise absorbed large amount of asbestos fibers emanating from certain products he was working with and around, which were manufactured, sold, distributed, installed, or promoted by the following Defendants:

   a. AIR & LIQUID SYSTEMS CORPORATION, individually and as successor by merger to BUFFALO PUMPS, INC.;
   b. ALFA LAVAL, INC., individually and as successor in interest to DELAVAL SEPARATOR CO. and SHARPLES CORP.;
   c. CLEAVER-BROOKS INC., f/k/a CLEAVER-BROOKS, a division of AQUA- CHEM INC.;
   d. DCO LLCS f/k/a DANA COMPANIES, individually and as successor in interest to VICTOR GASKET MANUFACTURING COMPANY;
   e. FOSTER WHEELER ENERGY CORPORATION;
   f. GENERAL ELECTRIC COMPANY;
   g. GRINNELL, LLC, d/b/a GRINNELL CORPORATION;
   h. PARAMOUNT GLOBAL, f/k/a VIACOM INC., f/k/a CBS CORPORATION, f/k/a VIACOM, INC., successor by merger to CBS CORP., f/k/a WESTINGHOUSE ELECTRIC CORPORATION, individually and as successor- in-interest to BF STURTEVANT CO.;
   i. REDCO CORPORATION, f/k/a CRANE CO., individually and as successor in interest to DEMING PUMP CO., COCHRANE CORPORATION, CHAPMAN VALVE CO., NATIONAL-US RADIATOR CORP., SWARTWOUT CO., and PACIFIC STEEL BOILER CORPORATION.

19. **Decedent** was injured **and killed** by products manufactured by each defendant.

20. The alleged exposure to asbestos does not extend beyond December 4, 1980, unless established by the evidence in the case as to a particular Defendant.

## FIRST CLAIM FOR RELIEF

### Negligence

### Against All Defendants

21. At all times set forth, the Defendants' products were being employed in the manner and

for the purposes for which they were intended.

22. Each Defendant knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of the persons inhaling, ingesting, or otherwise absorbing said asbestos fibers.

23. Mr. Robbins' exposure to and inhalation, ingestion, or absorption of the asbestos fibers emanating from Defendants' products and related work duties was reasonably foreseeable and could or should have been anticipated by Defendants.

24. **WARD ROBBINS died on October 6, 2023.**

25. At all times relevant to this action, Defendants had a duty to exercise reasonable care and caution for the safety of Mr. Robbins and others working with and around Defendants' asbestos-containing products.

26. Defendant failed to exercise ordinary care and caution for the safety of Mr. Robbins in one or more of the following respects:

    a. Included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons such as Mr. Robbins, working with or around said products, would inhale, ingest, or otherwise absorb great amounts of asbestos fibers;
    b. Included as best as in their products when defendants knew or should have known that said asbestos fibers would have a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting, or otherwise absorbing them;
    c. Included asbestos in their products when adequate substitutes for the asbestos in them were available;
    d. Failed to provide any or adequate warnings to persons working with and around the products of the dangers of inhaling, ingesting, or otherwise absorbing the asbestos fibers contained in them;
    e. Failed to conduct tests on the asbestos- containing products manufactured, sold, delivered, or installed by the Defendants in order to determine the hazards to which workers such as **Decedent** might be exposed while working with or around said products, which released inhalable asbestos fibers.

27. That as a direct and proximate result of one or more of the foregoing acts or omissions

on the part of the Defendants, Mr. Robbins was exposed to and inhaled, ingested, or otherwise absorbed great amounts of asbestos fibers, causing him to develop lung cancer, which disabled and disfigured him, **and led to his death. Decedent** has been compelled to expend and become liable for large sums of monies for hospital, medical, and other care services necessary for the treatment of his asbestos-induced disease and conditions; Mr. Robbins experienced great physical pain and mental anguish as a result of the inhalation, ingestion, and absorption of said asbestos fibers; that as a further result of Mr. Robbins' asbestos-induced disease and conditions, **Decedent** was hindered and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would accrue to him and his estate.

28. As a result of Defendants' negligence, **Decedent** has been damaged in an amount to be determined by the court, but no less than **SEVENTY-FIVE** THOUSAND (**$75**,000.00) DOLLARS, and the costs of these proceedings, which will fairly and reasonably compensate for **Decedent**'s injuries.

## SECOND CLAIM FOR RELIEF

### Strict Liability

### Against All Defendants

29. At the time Defendants used, installed, manufactured, sold, and distributed the asbestos- containing products to which Mr. Robbins was exposed, said products were in a defective condition and unreasonably dangerous in that:

    a. Said products contained friable asbestos fibers as a constituent substance;
    b. Said fibers were highly toxic, deleterious, poisonous, and harmful to the health of Mr. Robbins and others similarly situated; and
    c. Said products were not accompanied by any warning/instructions or by inadequate warning/instructions advising of the danger of exposure to asbestos or of precautions to be employed in the use of asbestos-containing products.

30. Defendants' defective products reach the point of Mr. Robbins' exposure in substantially the same condition as when defectively designed, used, manufactured, distributed, and sold.

31. At all times relevant to this action, said products were used in the manner and environment intended, and in the manner reasonably foreseeable and anticipated by the Defendants.

32. Defendants are strictly liable to **Decedent** for all injuries and damages that were contracted as a direct and proximal result of Mr. Robbins' exposure to asbestos from said products.

33. Asbestos and asbestos-containing products are inherently dangerous and as such, the Defendants, who made or sold asbestos or the equipment, processes or other things necessary for its use, are strictly liable to **Decedent** for all injuries and damages which were contracted thereby.

34. All Defendants who assisted, directly or indirectly, in the leasing or licensing of asbestos, asbestos-containing products and all equipment necessary for their use are strictly liable to **Decedent** for all the injuries and damages which were contracted thereby.

35. The handling of asbestos packages, installation, removal, and use of asbestos and asbestos- containing products is an ultra-hazardous activity, and Defendants, who assisted directly or indirectly in this, are strictly liable for **Decedent**'s injuries which were caused thereby.

36. The Defendant manufacturers and suppliers warranted the asbestos products for their intended purpose and use. Defendants violated this warranty, as the products were

neither packaged nor provided in a method proper for their intended uses; and Defendants are strictly liable to **Decedent** for all injuries caused thereby.

37. That as a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants, Mr. Robbins was exposed to and inhaled, ingested, or otherwise absorbed great amounts of asbestos fibers, causing him to develop lung cancer, which disabled and disfigured him. **Decedent** has been compelled to expend and become liable for large sums of monies for hospital, medical, and other care services necessary for the treatment of his asbestos-induced disease and conditions; and Mr. Robbins experienced great physical pain and mental anguish, **and ultimately death,** as a result of the inhalation, ingestion, and absorption of said asbestos fibers and will continue to suffer similarly.

38. As a result of Defendants' strict liability, Plaintiff has been damaged in an amount to be determined by the court, but no less than **SEVENTY-FIVE** THOUSAND (**$75**,000.00) DOLLARS, and the costs of these proceedings, which will fairly and reasonably compensate for **Decedent'**s injuries.

## THIRD CLAIM FOR RELIEF

### Wrongful Death

### Against All Defendants

39. **At all times relevant to this action, the Defendants had a duty to exercise reasonable care and caution for the safety of the Decedent and others working with or around Defendants' asbestos-containing products.**

40. **The Defendants failed to exercise ordinary care and caution for the safety of the Decedent in one or more of the following respects:**

a. Included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons such as the Decedent, working with or around said products, would inhale, ingest, or otherwise absorb great amounts of asbestos fibers;

b. Included asbestos in their products when Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

c. Included asbestos in their products when adequate substitutes for the asbestos in them were available;

d. Included asbestos in their products when Defendants knew or should have known that such inclusion rendered the products unreasonably dangerous and defective; By poor manufacturing or by the nature of the products, formulae, or ingredients themselves, failed to encapsulate, incarcerate, contain, or control the asbestos fibers within, making their products unreasonably likely to emit harmful amounts of renegade, loose or friable asbestos during normal use, maintenance, installation, removal or handling;

e. Failed to provide any or adequate warnings to persons working with and around the products of the dangers of inhaling, ingesting, or otherwise absorbing the asbestos fibers contained in them;

f. Failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting, or otherwise absorbing the asbestos fibers in them;

g. Failed to conduct tests on the asbestos-containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which workers such as the Decedent might be exposed while working with or around said products.

41. That as a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants, the Decedent was exposed to and inhaled, ingested, or otherwise absorbed great amounts of asbestos fibers, causing Decedent to develop lung cancer, resulting in WARD ROBBINS's death.

42. As a result, the next of kin of the Decedent have suffered great losses of a personal and pecuniary nature, including the loss of companionship, as well as grief, sorrow, and mental suffering subjecting Defendants to liability.

43. The potential beneficiaries are (a) the Estate of WARD ROBBINS, (b) Personal

Representative ASHLEY ROBBINS, and (c) the children of Decedent, including ASHLEY ROBBINS.

44. ASHLEY ROBBINS is the Personal Representative of the Estate of WARD ROBBINS. On behalf of the Estate of WARD ROBBINS, ASHLEY ROBBINS seeks recovery of medical and funeral expenses chargeable to the Estate.

45. Plaintiff has been damaged in an amount to be determined by the Court, but in any event, exceeding SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS and the costs of these proceedings, which will fairly and reasonably compensate for Plaintiff's injuries.

## FOURTH CLAIM FOR RELIEF

### Loss of Consortium

### Against All Defendants

46. ASHLEY ROBBINS is the surviving Daughter of Decedent, WARD ROBBINS, and, at all pertinent times, was his daughter.

47. As a direct and proximate cause of the breach of duty and wrongdoing of the Defendants and the resulting injury to Decedent, as more particularly described in the preceding counts, Decedent's daughter, ASHLEY ROBBINS, has suffered a loss of her right.

48. ASHLEY ROBBINS has suffered damages in the past, and will continue to do so in the future, as follows:

   a. Damages in the nature of pecuniary loss resulting from the injuries of her father, Decedent WARD ROBBINS. These damages include the loss of care, maintenance, support, services, advice, counsel, and reasonable contributions of pecuniary value that Decedent WARD ROBBINS could have provided to ASHLEY ROBBINS had he not been injured and killed.
   b. Damages in the nature of loss of consortium and damage to the parental

relationship. These damages include the loss of benefits flowing from the love, comfort, and society that ASHLEY ROBBINS, in reasonable probability, would have received from Decedent WARD ROBBINS had he not been injured and killed.

c. Damages in the nature of mental anguish. These damages include the emotional pain, torment and suffering ASHLEY ROBBINS experienced in the past and which, in reasonable probability, will suffer in the future, resulting from the tragic and untimely injuries and death of her father, Decedent WARD ROBBINS.

49. **Plaintiff has been damaged in an amount to be determined by the Court, exceeding SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, and the costs of these proceedings, which will fairly and adequately compensate for Plaintiff's injuries.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendants, granting Plaintiff the following relief:

50. The entry of judgment in favor of the Plaintiff on each and every cause of action;

51. The award of the requested damages no less than **THREE HUNDRED THOUSAND ($300,000.00) DOLLARS;**

52. The award of costs of the suit and attorney's fees; and

53. Such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

54. Plaintiff respectfully demands a jury on all issues that are so triable.

## CERTIFICATION AND CLOSING

Under Federal Rules of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for

extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: January 9, 2024

Respectfully Submitted,

***/s/ Nicholas Larkins***
**Nicholas Larkins**
**Florida Bar No. 1048492**
**nlarkins@vinsonlawoffice.com**
**VINSON LAW, P.A.**
**5505 West gray street**
**Tampa, FL 33609**
**Phone: (813) 839-5708**

# EXHIBIT A

1IN THE CIRCUIT COURT FOR SUMTER COUNTY,
FLORIDA                          PROBATE DIVISION

IN RE:  ESTATE OF
WARD ROBBINS

File No. 2024CP000213AXMX

Division

Deceased.

## LETTERS OF ADMINISTRATION
(single personal representative)

TO ALL WHOM IT MAY CONCERN:

WHEREAS, WARD ROBBINS, a resident of Sumter County, Florida, died on October 6, 2023, owning assets in the State of Florida, and

WHEREAS, ASHLEY ANN ROBBINS has been appointed Personal Representative of the estate of the decedent and has performed all acts prerequisite to issuance of Letters of Administration in the estate,

NOW, THEREFORE, I, the undersigned Circuit Judge, declare ASHLEY ANN ROBBINS duly qualified under the laws of the State of Florida to act as Personal Representative of the estate of WARD ROBBINS, deceased, with full power to administer the estate according to law; to ask, demand, sue for, recover and receive the property of the decedent; to pay the debts of the decedent as far as the assets of the estate will permit and the law directs; and to make distribution of the estate according to law.

**DONE and ORDERED** this Monday, February 19, 2024 in Bushnell, Sumter County, Florida.

60-2024-CP-000213-CPAM 02/19/2024 04:25:50 PM

Kristie Healis, Circuit Judge
60-2024-CP-000213-CPAM 02/19/2024 04:25:50 PM

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing has been furnished by e-service on Monday, February 19, 2024 to:

Derek B Alvarez
efilingacceptances@gendersalvarez.com

Jay Raghunandan, Judicial Assistant

**The party who submitted this proposed order to the Court for approval is required to serve a copy of the signed order via U.S. mail upon any person(s) not registered to receive service via the e-portal and certify said service through a filed notice of service within five (5) days of the entry of order.**